**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 09-33312

RICHARD TRAVIS GREENE
DEANA SHEA GREENE

    Debtors

JOHN P. NEWTON, JR., TRUSTEE

    Plaintiff

v.             Adv. Proc. No. 10-3038

BANK OF AMERICA
and/or BAC HOME LOANS

    Defendant

**MEMORANDUM ON DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

APPEARANCES:  MAYER & NEWTON
        John P. Newton, Jr., Esq.
        1111 Northshore Drive
        Suite S-570
        Knoxville, Tennessee 37919
        Attorneys for Plaintiff

        BRADLEY ARANT BOULT CUMMINGS, LLP
        Austin L. McMullen, Esq.
        1600 Division Street
        Suite 700
        Nashville, Tennessee 37203
        Attorneys for Defendant Bank of America

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff on May 4, 2010, seeking to avoid, pursuant to 11 U.S.C. § 544 (2006), the Defendant's[1] lien on real property of the Debtors and a determination that the property is free and clear of liens. The Defendant filed its Answer on June 7, 2010, denying the allegations in the Complaint and the Plaintiff's entitlement to avoid its lien and sell the real property free and clear. Pursuant to the Pre-Trial Order entered on July 21, 2010, the Motion for Relief From the Stay and Abandonment filed by the Defendant in the Debtors' case on April 28, 2010, and the Trustee's Objection to Proof of Claim No. 22-2 Filed by the Bank of America filed in the Debtors' case by the Plaintiff on May 20, 2010, were consolidated for trial with this adversary proceeding.

On July 19, 2010, the Defendant filed the Defendant's Motion for Summary Judgment (Motion for Summary Judgment), accompanied by a brief and Statement of Undisputed Material Facts as required by E.D. Tenn. LBR 7056-1. Also filed by the Defendant in support of the Motion for Summary Judgment on July 19, 2010, was a document entitled Notice of Filing (July 19, 2010 Notice of Filing) to which the following exhibits are attached: (A) a Deed of Trust executed by the Debtors on February 21, 2009, granting Homeowners Mortgage of America, Inc. dba Foundation Financial Group a mortgage on real property located at 825 Garners Landing Boulevard, Seymour, Sevier County, Tennessee (Garners Landing Deed of Trust); (B) the Affidavit of Lois McCurry, Chief Deputy of the Register of Deeds for Sevier County, Tennessee to which two exhibits are attached: (A) page one of the listing of instruments (documents log) received for registration by the

---

[1] The Plaintiff named Bank of America "and/or" BAC Home Loans as parties Defendant. Because the Plaintiff never caused a summons to be issued or served on BAC Home Loans, the court will, on its own motion, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7004(a) of the Federal Rules of Bankruptcy Procedure, dismiss the Plaintiff's action as to BAC Home Loans, without prejudice. Accordingly, all references in this Memorandum to the "Defendant" are to Bank of America.

2

Sevier County Register of Deeds on March 11, 2009; and (B) a copy of the Garners Landing Deed of Trust assigned instrument number 09015404 by the Sevier County Register of Deeds on March 11, 2009; and (C) the Proof of Claim filed by the Defendant on April 6, 2010, in the Debtors' case asserting a claim in the amount of $203,938.18 secured by a lien on the 825 Garners Landing Boulevard, Seymour, Sevier County, Tennessee property (Garners Landing Property) pursuant to the Garners Landing Deed of Trust.[2]

In accordance with E.D. Tenn. LBR 7056-1(b) and pursuant to an Order - Motion to Extend Time to Respond entered on August 13, 2010, the Plaintiff filed the Response to Defendant's Motion for Summary Judgment (Response to Motion for Summary Judgment) on October 8, 2010, which was accompanied by the Plaintiff's Response to Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment and a brief. In support of his opposition to the Motion for Summary Judgment, the Plaintiff submitted the Affidavit of John P. Newton, Jr., Trustee, to which the following exhibits are attached: (A) the Legal Description for the Garners Landing Property; (B) a Facsimile dated October 28, 2009, from the Plaintiff to the Defendant, requesting that the Defendant provide him with a copy of its Proof of Claim and attachments establishing proof of its security interest in the Garners Landing Property; (C) the Response of Bank of America to Plaintiff's First Requests for Admissions dated September 30, 2010; and (D) a Limited Power of Attorney from Deutsche Bank National Trust Company f/k/a Bankers Trust Company of California, NA to GMAC Mortgage LLC dated January 5, 2009.

---

[2] Among the documents attached to the Proof of Claim is a Corporate Assignment of Deed of Trust evidencing the assignment of the Garners Landing Deed of Trust by Homeowners Mortgage of America, Inc. dba Foundation Financial Group to the Plaintiff. This document was executed on May 12, 2010, after the Debtors commenced their bankruptcy case on June 17, 2009.

3

The Defendant filed the Response of Bank of America to Plaintiff's Statement of Additional Undisputed Material Facts on October 22, 2010,[3] and as authorized by the Agreed Order entered on October 26, 2010, filed the Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment on November 1, 2010, to address an issue raised by the Plaintiff in his Response to Motion for Summary Judgment.[4] The Defendant also filed on November 1, 2010, the following supplemental documents in support of its Motion for Summary Judgment: (1) the Amended Response of Bank of America to Plaintiff's First Requests for Admissions dated October 29, 2010; and (2) the Affidavit of Joseph Peloso.[5]

On December 29, 2010, the court entered an Order (December 29, 2010 Order) pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, as amended effective December 1, 2010, advising the parties that it may grant summary judgment for the nonmoving Plaintiff independent of the Defendant's Motion for Summary Judgment, setting forth certain undisputed material facts of which

---

[3] The Plaintiff did not file a separate document containing additional facts; however, in the Memorandum of Plaintiff in Opposition to Motion for Summary Judgment Filed by Defendant Bank of America, the Plaintiff set forth eleven facts, to which the Defendant responded as authorized by E.D. Tenn. LBR 7056-1(c).

[4] In his Response to Motion for Summary Judgment, the Plaintiff raised an issue of standing grounded on whether the Defendant has possession of the original note executed by the Debtors and whether the original note has been endorsed. Pursuant to the October 26, 2010 Agreed Order prepared and submitted by the parties, the court directed the Defendant to "file a response on the issues of standing, possession of the note and endorsement of the note, and . . . any related . . . material on or before November 1, 2010." On November 1, 2010, the Defendant filed a Notice of Filing to which it attached as Exhibit B the Affidavit of Joseph Peloso, an employee of BAC Home Loans Servicing, LP, the servicing agent for the Defendant. In his Affidavit, Mr. Peloso stated that he is in possession of and has examined the Collateral File associated with the Debtors' loan; that "[t]he Collateral File contains the original Note, endorsed by Allonge on February 21, 2009 to Countrywide Bank, FSB, which was then endorsed to Bank of America, NA[;]" and that "[t]he original Deed of Trust is also in the Collateral File" (*see supra* n.1). Although a copy of the Note and Allonge are not attached to the Peloso Affidavit, the Plaintiff did not file an objection to the Affidavit. Accordingly, based upon the record before it, the court does not find the Defendant's standing to be an issue in the resolution of the pending Motion for Summary Judgment.

[5] *See supra* n.2.

it intends to take judicial notice, continuing the trial to be reset, and granting the parties additional time to file any further response in support of their respective positions. Thereafter, on January 21, 2011, the Defendant filed a Second Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment and the Notice of Filing of the Affidavit of Richard W. Norris. It additionally filed the Defendant's Motion for Hearing on Motion for Summary Judgment on January 21, 2011, which was granted by an Order entered January 24, 2011. Oral argument was held on March 3, 2011.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (B), (K), (O) (2006).

I

The following facts are not in dispute or have not been rebutted. The Debtors filed the joint Voluntary Petition commencing their bankruptcy case under Chapter 7 on June 17, 2009, and the Plaintiff was appointed, and continues to serve as, Trustee of the bankruptcy estate. STMT. OF UNDISP. MAT. FACTS at ¶ 10; NEWTON AFF. at ¶¶ 1, 11; DEC. 29, 2010 ORDER at ¶ A. As part of his routine duties, the Plaintiff reviewed the Debtors' statements and schedules and investigated the claim of the Defendant listed by the Debtors on their Schedule D as secured by the Garners Landing Property, including a review of the internet records of the Sevier County Register of Deeds. NEWTON AFF. at ¶¶ 2-3. Through this search, the Plaintiff discovered no recorded deeds of trust encumbering the Garners Landing Property, and on October 28, 2009, he sent a facsimile to the Defendant, requesting that it file a proof of claim with documentation establishing its security interest. NEWTON AFF. at ¶¶ 3-4, 6; NEWTON AFF. EX. B.

When a proof of claim was not filed, the Plaintiff filed the Motion to Sell Real Property Free and Clear of All Liens 11 U.S.C. § 363(f); Notice of Hearing; and Application for Payment of Real Estate Commissions on March 18, 2010, notifying creditors of his intention to sell the Garners Landing Property for the sum of $176,700.00. STMT. OF UNDISP. MAT. FACTS at ¶ 13; NEWTON AFF. at ¶¶ 6-7; DEC. 29, 2010 ORDER at ¶ C. The Defendant filed an Objection to Motion to Sell Real Property Free and Clear of Liens and Application for Payment of Real Estate Commissions on April 6, 2010, and the sale was not completed, as the buyer sought a release due to a delay in closing. NEWTON AFF. at ¶ 9; DEC. 29, 2010 ORDER at ¶ D. On April 23, 2010, the Plaintiff filed the Motion to Withdraw Trustee's Motion to Sell Real Property Free and Clear of Liens Filed on March 18, 2010, which was granted by an Order entered on April 23, 2010. DEC. 29, 2010 ORDER at ¶¶ F-G.

The Defendant filed a Proof of Claim on March 18, 2010, amended on April 6, 2010, in the amount of $203,938.18, asserting a lien on the Garners Landing Property, to which the Plaintiff has objected. JULY 19, 2010 NOT. OF FILING, EX. C; STMT. OF UNDISP. MAT. FACTS at ¶ 11; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 11-12; DEC. 29, 2010 ORDER at ¶ E. Attached to the Proof of Claim is a copy of the Garners Landing Deed of Trust containing a stamp of the Sevier County Register of Deeds dated March 11, 2009, reflecting that this document was, on that date, assigned instrument number 09015404 and "BK/PG:3300/584-594." JULY 19, 2010 NOT. OF FILING, EX. C.

The record establishes that an electronic copy of the Garners Landing Deed of Trust was received by the Sevier County Register of Deeds on March 11, 2009, from Business Information Systems (B.I.S.), an electronic recording vendor for Sevier County, which was noted in the documents log maintained by the Register's Office for all documents received for registration. *See*

McCurry Aff. Ex. A. As noted on the documents log, the Garners Landing Deed of Trust was assigned instrument number 09015404;[6] however, following its acceptance for registration by the Register's Office and the assignment of a book and page number, the Garners Landing Deed of Trust was voided by the Sevier County Register of Deeds because it was mislabeled as a "Miscellaneous Document" and the mortgage filing taxes were not paid. McCurry Aff. at ¶¶ 3-6. After the Garners Landing Deed of Trust was voided, a Limited Power of Attorney from Deutsche Bank National Trust Company f/k/a Bankers Trust Company of California, NA to GMAC Mortgage LLC, which had been assigned instrument number 09015405, was recorded on March 11, 2009, at Book 3300, Page 584. Newton Aff. at ¶ 8; Newton Aff. Ex. D.

The Defendant filed a Motion for Relief From Stay and Abandonment on April 28, 2010, to which the Plaintiff objected. Resp. to Addl. Undisp. Mat. Facts at ¶ 9. Thereafter, the Plaintiff initiated this adversary proceeding on May 4, 2010. Pursuant to the Pretrial Order entered on July 21, 2010, the issues are defined as follows:

> (a) whether, on the date of the filing of the Debtors' bankruptcy petition, the Defendant had a deed of trust recorded against the Garners Landing Property;
>
> (b) whether the Garners Landing Deed of Trust is void or avoidable under §§ 544 and/or 547;
>
> (c) if the Garners Landing Deed of Trust is avoidable or void, whether it is preserved for the benefit of the estate under 11 U.S.C. § 551;

---

[6] The March 11, 2009 documents log lists the name and address of the filer of instrument number 09015404 as "Simplifile." McCurry Aff. Ex. A. As stated by Ms. McCurry in her Affidavit, "[t]he return address for [documents] delivered electronically by B.I.S. is typically listed as 'Ingeo' or 'Simplifile.'" McCurry Aff. at ¶ 3. As further explained by Mr. Norris in his Affidavit, Simplifile is an electronic recording agent used by Network Closing Services, Inc., the entity that closed the Debtors' loan from Homeowners Mortgage of America, Inc. on February 21, 2009. Norris Aff. at ¶ 7. Mr. Norris is the CEO and owner of Network Closing Services, Inc. Norris Aff. at ¶ 3.

(d) whether the claim filed by the Defendant is secured and/or properly perfected pre-petition;

(e) whether the Defendant has standing to assert a secured claim in the Debtors' bankruptcy case;

(f) whether the Defendant holds a valid lien on the Garners Landing Property;

(g) whether the Plaintiff is entitled to sell the Garners Landing Property free and clear of liens; and

(h) whether the Defendant is entitled to an order granting it relief from the automatic stay.

In its Motion for Summary Judgment, the Defendant avers that there are no genuine issues of material fact, that the Plaintiff may not avoid its lien against the Garners Landing Property or sell the property free and clear of liens, and that it is entitled to judgment as a matter of law.

## II

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, amended effective December 1, 2010, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" with the procedures concerning summary judgment now requiring the following:

(1) ***Supporting Factual Positions***.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

> (2) *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure).[7] Additionally, "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant[.]" FED. R. CIV. P. 56(f).

When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). As the movant, the Defendant bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material fact and the Plaintiff's claims are factually unsupported, entitling it to judgment as a matter of law. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the Plaintiff, the nonmoving party, to prove

---

[7] Courts were authorized, "insofar as just and practicable," to apply the December 1, 2010 amendments to Rule 56 to all pending motions. *See* Apr. 28, 2010 Sup. Ct. Order. As stated in the Notes of Advisory Committee on the 2010 amendments, the standard for granting summary judgment has not changed, and "[t]he amendments will not affect continuing development of the decisional law construing and applying [the standard]."

that there are genuine disputes of material fact for trial; however, reliance solely on allegations or denials contained in the pleadings or "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). The facts and all resulting inferences are viewed in a light most favorable to the non-movant, with the court deciding whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 106 S. Ct. at 1356 (citations omitted).

Based upon the record, the court finds that there is no genuine dispute as to any material fact under which the Defendant can prevail. The non-movant Plaintiff is, however, entitled to summary judgment pursuant to Rule 56(f).

### III

Pursuant to 11 U.S.C. § 541(a) (2006), the Debtors' bankruptcy estate, consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case[,]" was created upon the filing of their Voluntary Petition under Chapter 7, and the Plaintiff, in his role as Trustee, became the representative of the Debtors' estate, succeeding to all of their interests in property of the estate and inheriting the responsibility to use estate property for the best interests of creditors, including the sale of property if necessary. 11 U.S.C. §§ 323(a), 704(1) (2006). To aid in the

exercise of the Plaintiff's statutory duties, the Bankruptcy Code affords him certain "strong arm powers" under § 544, including the following:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (2006). Section 544(a) confers upon chapter 7 trustees that of an "'ideal creditor, irreproachable and without notice, armed *cap-a-pie* with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings.'" *Lancaster v. Hurst (In re Hurst)*, 27 B.R. 740, 742 (Bankr. E.D. Tenn. 1983) (quoting *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D. Miss. 1932)). In other words, "the trustee hypothetically purchases the debtor's property at the commencement of the bankruptcy case, then determines whether it is subject to any valid prior interests." *Gregory v. Ocwen Fed. Bank (In re Biggs)*, 377 F.3d 515, 517 (6th Cir. 2004).

Although the authority acquired by the Plaintiff is vested through federal bankruptcy law, his powers are determined under applicable state law. *See Waldschmidt v. Dennis (In re Muller)*, 185 B.R. 552, 554 (Bankr. M.D. Tenn. 1995). Pursuant to Tennessee Code Annotated § 66-26-102 (2004), "[a]ll instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such

11

time[,]" with deeds of trust among those documents eligible for registration under § 66-24-101(a)(8) (2009). Nevertheless, without registration, deeds of trust are still effective between the parties, "but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided[,]" TENN. CODE ANN. § 66-26-101 (Supp. 2010), and "[a]ny instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." TENN. CODE ANN. § 66-26-103 (Supp. 2010). Additionally, § 66-26-105 sets forth the priority of registered instruments as follows:

> Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

TENN. CODE ANN. § 66-26-105 (2004).

The Garners Landing Deed of Trust was received by the Sevier County Register of Deeds on March 11, 2009, at 11:40 a.m., accepted in the Sevier County Register of Deeds' remote system at 11:47 a.m., stamped at 11:54 a.m. with instrument number 09015404, and assigned book number 3300 and page numbers 584-594. NORRIS AFF. AT ¶ 8; MCCURRY AFF. at ¶¶ 4-5. Thereafter, Network Closing Services, Inc., the closing agent for the Debtors' loan, received back from the Sevier County Register's Office the Garners Landing Deed of Trust with no indication there had been a recording issue. NORRIS AFF. AT ¶ 9. However, after accepting the Garners Landing Deed of Trust, it was then voided by Ms. McCurry because it was labeled as a "miscellaneous document" and the mortgage tax had not been received. MCCURRY AFF. at ¶ 6. Thereafter, she registered a subsequently filed instrument with the identical book and initial page number previously

12

assigned to the Garners Landing Deed of Trust. MCCURRY AFF. at ¶ 6. Pursuant to § 8-13-108(a)(2), registers of deeds are charged with the following duties:

> (1) Determine whether each instrument offered for registration is entitled to registration under the laws of this state;
>
> (2) If the instrument is accepted for registration, note on the instrument the time the instrument is actually received by the register;
>
> (3) Keep a notebook containing information regarding all instruments registered, except that a separate notebook for uniform commercial code instruments may also be kept. The information contained in the notebook shall include the names of the grantors, grantees, the time of receipt (date, hour and minute) and the fees received. . . . . The notebook shall be maintained in a well-bound book or computer storage media in accordance with § 10-7-121. The notebook information shall be maintained as a permanent record;
>
> (4) Enter into the appropriate notebook the required information as listed above. The register shall endeavor to make entries into the notebook in the order of time of reception as nearly as practicable, but entries shall be made without undue delay even if due to volume of instruments received the exact order of time of reception cannot be maintained. However, no instrument received on a certain day shall be entered into the notebook after instruments received on a later day;
>
> (5) Record or file the instrument in the appropriate book or record series;
>
> (6) Certify the fact of registration upon every instrument registered, the time it was received, the book and page or other reference where it is recorded or filed, the amount of fees received (if any), and the amount of taxes received (if any). This certification shall be entered on each instrument, and if the register determines that insufficient space exists on the instrument to enter the certification without overlaying writing on the instrument, the register may add a page to contain the certification, attach this page to the instrument being registered, and this additional page shall be considered a part of the original instrument to be registered;
>
> (7) Carefully preserve as permanent records the recorded copies of all deeds, deeds of trust and other instruments affecting interests in real estate;
>
> (8) Exhibit the notebooks and instruments registered to all persons wishing to inspect them, during regular business hours;

(9) Register, in the proper book of the register's office, the correction by the clerk of any error or omission in the clerk's certificate of probate or acknowledgment;

. . . .

(11) Procure and keep good and well-bound books, to be called books of trust deeds, etc., in which the register shall register, separately from land titles, in the order in which they are filed, all mortgages and deeds of trust on personal property, contracts, leases, powers of attorney, as to personalty, and all other instruments required to be registered that are no part of the title or conveyance of any real estate, so as to have real estate titles in books separate from other conveyances. . . . [.]

. . . .

TENN. CODE ANN. § 8-13-108(a) (Supp. 2010). "The recording and registering of such instruments, papers, documents or notices in the 'official record book' imparts notice as required by law in like manner and effect as if the original instrument, paper, document or notice was recorded in separate books or film." TENN. CODE ANN. § 8-13-108(b)(3) (Supp. 2010). Additionally, § 67-4-409(a) states, in material part:

**Recordation Tax.—**

. . . .

(b) MORTGAGES, DEEDS OF TRUST AND OTHER INSTRUMENTS. Prior to the public recordation of any instrument evidencing an indebtedness, including but not limited to, mortgages, [and] deeds of trust . . . there shall be paid a tax, for state purposes only, of eleven and one half cents (11.5 ¢) on each one hundred dollars ($100) or major fraction thereof of the indebtedness so evidenced.

. . . .

(3) This tax shall be paid to and collected by county registers . . . and registration is forbidden until such tax has been paid.

. . . .

(10) (A) Nonpayment or underpayment of tax on an indebtedness . . . shall not affect or impair the effectiveness, validity, priority, or enforceability of

14

> the security interest or lien created or evidenced by the instrument, it being declared the legislative intent that the effectiveness, validity, priority, and enforceability of security interest and liens are governed solely by law applicable to security interests and liens, and not by this title.
>
> (B) Such nonpayment . . . until cured, shall result in the imposition of a tax lien . . . in favor of the department of revenue . . .[.]

TENN. CODE ANN. § 67-4-409(a) (Supp. 2010); *accord Nashville City Bank & Trust Co. v. White*, 1990 Tenn. App. LEXIS 195, at *13, 1990 WL 31745, at *5 (Tenn. Ct. App. Mar. 23, 1990) (Koch, J., dissenting) ("The purpose of § 67-4-409 is "to generate state revenue, not supplant the priority rules found in . . . the Code.").

The Defendant argues that the intentional act of the Sevier County Register of Deeds in voiding the Garners Landing Deed of Trust after its receipt on March 11, 2009, has no effect upon the fact that the Garners Landing Deed of Trust was originally accepted and registered, thereby giving "notice to all the world" of the Defendant's lien. However, "[t]he seemingly all inclusive phrase 'notice to all the world' is misleading." *Burch v. McKoon, Billings & Gold, P.C.*, 2005 WL 2104611, at *6 (Tenn. Ct. App. Aug. 31, 2005) (holding that "[p]ersons whose recorded interests in the property predate rather than postdate the recorded instrument in question do not form a part of the 'world.'").

> The proposition is frequently announced that under the recording statutes, the proper record of an instrument authorized to be recorded is notice to all the world. But this means simply that the record is open to all, and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. It is not a publication to the world at large. Those who, by the terms of the recording laws, are charged with constructive notice of the record of an instrument affecting land are, therefore, those who are bound to search the records for that particular instrument.

15

*Burch*, 2005 WL 2104611, at *7 (quoting *Romero v. Sanchez*, 492 P.2d 140, 143-44 (N.M. 1971) (quoting 45 AM. JUR., *Records and Recording Laws* § 86)).  Similarly, this court has recently addressed the issue of notice with respect to recorded and unrecorded documents, stating as follows:

> "Under Tennessee law, 'whatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and in good faith[,]'" *In re Bushee*, 319 B.R. 542, 546 (Bankr. E.D. Tenn. 2004) (quoting *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn. 1950)), and the Tennessee Supreme Court has held that "[a] legally registered deed of trust [or other document] places subsequent creditors and purchasers on constructive notice." *Limor v. Fleet Mortgage Group (In re Marsh)*, 12 S.W.3d 449, 454 (Tenn. 2000).  Accordingly, "[r]egistration is imperative because, although it continues to be effective between the parties thereto, *see* TENN. CODE ANN. § 66-26-101 (2004), an unrecorded deed of trust 'shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.'" *Mostoller v. Equity One, Inc. (In re Hickman)*, 367 B.R. 620, 622 (Bankr. E.D. Tenn. 2007) (quoting TENN. CODE ANN. § 66-26-103 (2004 & Supp. 2006)). As summarized by the Tennessee Supreme Court,
>
>> Notice is generally said to take two forms, actual or constructive. Constructive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice. "It has been well said that 'constructive notice is the law's substitute for actual notice, intended to protect innocent persons who are about to engage in lawful transactions . . . .'"  Nevertheless, "[a]ctual notice must be given in the absence of a statute providing some means for constructive notice."  Constructive notice encourages diligence in protecting one's rights and prevents fraud.  If either no statute requires recordation to create constructive notice or a recordable instrument has not been properly recorded, then actual notice is required to estop a person.
>>
>> While "[i]t is true that recordation creates constructive notice as distinguished from actual notice, in that ordinarily actual notice is when one sees with his eyes that something is done," another kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice. Some authorities classify inquiry notice as a type of constructive notice, but in Tennessee, it has come to be considered as a variant of actual notice.  "The words 'actual notice' do not always mean in law

16

> what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." Even a good faith failure to undertake the inquiry is no defense. Thus, "[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith."
>
> *Blevins v. Johnson County*, 746 S.W.2d 678, 682-83 (Tenn. 1988) (internal citations omitted).

*Fitzpatrick v. Fredenberg (In re Wilson)*, 2010 WL 56080, at *4-5, 2010 Bankr. LEXIS 42, at *10-13 (Bankr. E.D. Tenn. Jan. 5, 2010).

It is undisputed from the record before the court that the Garners Landing Deed of Trust was not a matter of public record in the Office of the Sevier County Register of Deeds when the Debtors filed their bankruptcy case on June 17, 2009, having been voided and removed by Ms. McCurry on March 11, 2009. It is also undisputed that Ms. McCurry's actions were not authorized – and in fact, were prohibited – under the Tennessee statute. Thus, the question becomes whether the improper and unauthorized acts of the Sevier County Register of Deeds invalidate the initial recording. Section 67-4-409(b)(10)(A) makes it clear that the nonpayment of the recording tax is not intended to affect the validity, priority, or enforceability of an instrument accepted and recorded by a register of deeds. In addition, Attorney General Opinion 03-057 cited by Bank of America, analyzing many of the statutes referenced above, specifically states that "a register of deeds is not entitled to remove an instrument that has been accepted and recorded by a deputy register of deeds, even if the register later determines that the deed was not entitled to registration." 2003 Tenn. AG LEXIS 74, at *4 (May 1, 2003) (stating that the register is, however, "authorized to record his or her determination

that the instrument was not entitled to recording."); *see also* TENN. CODE ANN. § 66-24-101 (authorizing a register to refuse to register documents under certain circumstances). Even though this decision is not binding on the bankruptcy court, it correctly states the end result required by the statutes. Although the Defendant's lien was afforded notice under Tennessee Code Annotated § 66-263-102 for the brief period of time after it was recorded on March 11, 2009, once it was removed from the record books and replaced by a subsequent document, it was taken outside the recorded chain of title.

Contrary to the Defendant's argument, relevant case law falls in line with this determination, which the court deems to be more akin to the misfiling of a document rather than a mere clerical error by a filing official. *See, e.g., Taxel v. Chase Manhattan Bank (In re Deuel)*, 361 B.R. 509 (B.A.P. 9th Cir. 2006) (holding that a trustee's strong arm powers arise as of the commencement of the case by the filing of the voluntary petition, and the filing of a debtor's statements and schedules do not constitute constructive notice to defeat the trustee's powers), *aff'd by Chase Manhattan Bank USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073 (9th Cir. 2010); *SunTrust Bank, N.A. v. Northen*, 433 B.R. 532, 536 (M.D.N.C. 2010) (stating that a trustee expressly takes a debtor's property without regard to any knowledge, thus, any actual or constructive notice is irrelevant); *Arnold v. Bank of N.Y. Trust Co. (In re Badagliacca)*, 403 B.R. 288, 292-93 (Bankr. W.D.N.Y. 2009) (granting summary judgment to the Chapter 7 trustee and avoiding mortgage recorded with misspelled name, falling "outside the chain of title" and declining to recognize equitable subrogation "where the mortgagee, a sophisticated commercial entity, failed to draft its documentation properly, or to thereafter check, after its mortgage was recorded, to insure it was properly recorded and became a lien or encumbrance

18

against the ... property."); *Holiday Hospitality Franchising, Inc. v. States Res. Inc.*, 232 S.W.3d 41, 54 (Tenn. Ct. App. 2006) ("[T]he intervening rights of bona fide purchasers without notice - rights also possessed by the bankruptcy trustee under the strong arm provisions of the Bankruptcy Code - would preclude the reinstatement of a mistakenly released deed of trust if the purchaser could assert lack of notice.").

Based on the foregoing, the court finds that the Plaintiff is entitled to summary judgment as a matter of law, and the Motion for Summary Judgment filed by the Defendant on July 19, 2010, shall be denied. Clearly there is blame to be borne by the Sevier County Register of Deeds, whose office first recorded the Garners Landing Deed of Trust and then, improperly and contrary to statute, removed it from the recordation books, subsequently assigning the identical book and initial page number to another, completely unrelated document. Nevertheless, the actions of the Register's Office served to remove the Garners Landing Deed of Trust from the chain of title as if it had never been recorded, and upon the filing of the Debtors' bankruptcy petition in June 2009, the Trustee's rights as a bona fide purchaser intervened. The Plaintiff had no constructive knowledge of the lien, and when he researched the records of the Sevier County Register of Deeds Office after reviewing the Debtors' schedules listing the Defendant's secured claim, there was no record of the Garners Landing Deed of Trust to be found. The Plaintiff, as representative of the Debtors' bankruptcy estate, thus has the authority to avoid the Defendant's lien in order to sell the Garners Landing Property free and clear of liens. Additionally, the Trustee's Objection to Proof of Claim No. 22-2 Filed by Bank of America, filed by the Plaintiff on May 20, 2010, shall be sustained, and the Defendant's claim in the amount of $203,938.18 will be disallowed as secured but allowed as

unsecured. Further, the Motion for Relief From the Stay and Abandonment filed by the Defendant on April 28, 2010, shall be denied.

A Judgment consistent with this Memorandum will be entered.

FILED: March 11, 2011

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE